**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                     No. 25-cr-20319-SHL

ARI WASHINGTON,

      Defendant.

**DEFENDANT'S MOTION TO SUPPRESS
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

The Defendant, Ari Washington, by and through his appointed counsel of record and pursuant to Federal Rule of Criminal Procedure 12(b)(3), submits this Motion to Suppress and Memorandum of Law in Support of his Motion. Mr. Washington moves this Court to grant suppression of a firearm and narcotics[1] seized from his person during a traffic stop. In support of the Motion, Mr. Washington states as follows:

## I.    INTRODUCTION/ FACTS

Mr. Washington has been charged in the instant case as follows:

Count 1: Possession of a Firearm By Convicted Felon (18 U.S.C. §922(g)(1)).  (ECF No. 21)

Mr. Washington seeks an order granting his motion to suppress the results of an unlawful detention and subsequent search conducted by law enforcement.

---

[1] Mr. Washington is only charged with a 922(g)(1) violation at present but, out of an abundance of caution, the defense submits this motion to challenge the seizure of the firearm and suspected fentanyl and cocaine found during the search.

1

According to the investigative materials provided to the defense, on October 20, 2025, at approximately 8:07 p.m. Tennessee Highway Patrol Trooper Seiber approached Mr. Washington, who was parked in a grey Chevrolet Tahoe.  The Tahoe was in a cul-de-sac on Rutland Road.  The vehicle was running and the headlights were illuminated.  Mr. Washington was looking at his phone while in the driver's seat of a vehicle owned by his girlfriend, Vanessa Williams. Mr. Washington was parked outside of Ms. Williams's home. It is believed that Trooper Seiber was assigned to some form of "saturation patrol" and was likely attached to the Memphis "Safe Task Force."[2]  Based upon the available body-worn camera (BWC) footage, it appears that Trooper Seiber was wearing plainclothes rather than the customary Highway Patrol uniform.

Trooper Seiber's report states that the vehicle was "suspicious" because it was parked in the travel lane.  Trooper Seiber approached the front passenger window, asked Mr. Washington to roll it down, and then conducted an alleged "consensual encounter" and began to question Mr. Washington.  The BWC footage reveals the presence of another officer standing on the driver's side.  Both Trooper Seiber and the other officer continuously shine their flashlights into the vehicle during the encounter.

After exchanging a few pleasantries, Trooper Seiber then began asking probing questions of Mr. Washington, such as "are you a felon", "what were you convicted of", "are there any firearms in the car", and "is there anything in the car that a K-9 would hit on?"  Mr. Washington confirmed that he was a felon and had served time in prison, but denied that there was any contraband in the vehicle.  After another minute or so, Trooper Seiber asked for consent to search the vehicle.  Mr. Washington gave consent and willingly exited the Tahoe.

---

[2] See Presidential Memoranda "Restoring Law and Order in Memphis", September 15, 2025 (found at https://www.whitehouse.gov/presidential-actions/2025/09/restoring-law-and-order-in-memphis/) (visited January 23, 2026)

During the search of the Tahoe, officers located an AR-style pistol and a small amount of fentanyl.  After this, Mr. Washington was handcuffed and was informed that he was "being detained."  Mr. Washington subsequently told Trooper Seiber that he had some cocaine in his pocket.  The cocaine was retrieved without incident.  Mr. Washington was then formally arrested and transported directly to the Shelby County Correctional Center.  He was initially charged via criminal complaint, followed by an indictment.  (ECF Nos. 1, 21)

## II.   ARGUMENTS AND AUTHORITIES

**While described as a consensual encounter, the encounter between officers and Mr. Washington was an investigative detention from the beginning.**

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the absence of physical force, "even if there is a show of authority and a reasonable person would not feel free to leave, in order for a seizure to occur there must also be submission to the show of authority." *United States v. Smith,* 594 F.3d 530, 536 (6th Cir.2010) (citations omitted).

Not every interaction between an officer and a citizen is a seizure within the meaning of the Fourth Amendment, however. *United States v. Winfrey,* 915 F.2d 212, 216 (6th Cir.1990). There are three types of permissible encounters between police officers and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable

3

cause." *Smith,* 594 F.3d at 535 (quoting *United States v. Waldon,* 206 F.3d 597, 602 (6th Cir.2000)).

Investigative detentions and arrests are considered seizures "and thus must be conducted consistent with [ ]Fourth Amendment principles." *United States v. Avery,* 137 F.3d 343, 352 (6th Cir.1997). A consensual encounter, however, is not a seizure and, therefore, the Fourth Amendment is not implicated, "as long as [an] officer's actions do not convert it into an investigative detention." *Id.*

Police officers can initiate a consensual encounter with a citizen without regard to suspicion of criminal activity. It is well-established that an officer may approach a citizen and "generally ask questions of that individual, ask to examine that individual's identification, and request consent to search ... as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick,* 501 U.S. 429, 434–35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). As long as a "reasonable person would feel free to disregard the police and go about his business," the encounter is consensual and no suspicion is required. *Id.* at 434, 111 S.Ct. 2382 (quoting *California v. Hodari D,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)); *see also Waldon,* 206 F.3d at 603 (finding that "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that [they were] not free to leave"). "Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity." *Waldon,* 206 F.3d at 603 ("We know of no legal precedent suggesting a police officer can engage in a consensual encounter only with citizens whom he does not suspect of wrongdoing.").

With respect to investigatory detentions, or *Terry* stops, an officer can stop and briefly detain a person when the officer "has reasonable, articulable suspicion that [a] person *has been,* is, or is about to be engaged in criminal activity." *United States v. Atchley,* 474 F.3d 840, 847 (6th Cir.2007) (citation omitted) (emphasis in original). "Reasonable suspicion" exists when, "based on the totality of the circumstances, a police officer has a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *United States v. Gross,* 624 F.3d 309, 315 (6th Cir.2010) (quoting *United States v. Baldwin,* 114 Fed.Appx. 675, 679 (6th Cir.2004)). In assessing the totality of the circumstances, police officers may "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Pearce,* 531 F.3d 374, 380 (6th Cir.2008) (internal citations omitted). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Baldwin,* 114 Fed.Appx. at 679 (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581).

An encounter that begins "as an attempt by the police to consensually obtain" information can "develop[ ] into circumstances in which an investigative detention [is] justified." *United States v. Kimber,* 33 Fed.Appx. 717, 721 (6th Cir.2002). A consensual encounter "becomes a seizure when 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *United States v. Jones,* 562 F.3d 768, 772 (6th Cir.2009) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d

5

497 (1980)). In *Mendenhall,* the Supreme Court set forth several factors which, if present, are indicative of a seizure. Those factors include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S.Ct. 1870.

Mr. Washington respectfully submits that, from the outset, Trooper Seiber and the other officers engaged in an investigative detention, thus triggering his Fourth Amendment rights. Mr. Washington was parked in his girlfriend's vehicle on a cul-de-sac, rather than being stationary in a travel lane on a busy road. He was looking at his phone and was not engaged in any obvious criminal activity when the officers approached him. He was cordial with the officers and freely gave them his identification when requested.

It is noteworthy that multiple officers approached Mr. Washington to conduct this "consensual encounter." At least two police vehicles were present, although it does not appear that their blue lights were activated. The tenor of the conversation was inquisitive almost immediately from the outset of the encounter. Trooper Seiber asked very direct and odd questions of someone who was allegedly being subjected to a consensual encounter. As described above, the questions dealt with Mr. Washington's prior convictions and whether there were firearms present in the car. The presence of two officers, on opposite sides of the car, peppering a person with such questions, would lead a reasonable person to believe that he was not free to leave the scene, particularly when both officers are shining flashlights directly into his vehicle for several minutes.

### III.    <u>CONCLUSION</u>

Mr. Washington was subjected to an investigative detention from the outset in this case. The totality of the circumstances suggests that he was not free to leave, was questioned by two officers shining flashlights at him for several minutes, and was subjected repetitive questions that had nothing to do with his welfare, but were instead intended to elicit some "suspicious" behavior that would ultimately lead to some detection of contraband.

WHEREFORE, for the foregoing reasons, Mr. Washington moves this Court to grant his motion and suppress all evidence (the AR-style pistol and suspected fentanyl and cocaine) found by law enforcement in this case.

Respectfully submitted, this the 23rd day of January 23, 2026.

*s/ Greg Gookin*

Greg Gookin, TN BPR #023649
Assistant Federal Defender
200 Jefferson Ave., Suite 200
Memphis, TN 38103
901-544-3895
gregory_gookin@fd.org

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing document was forwarded by electronic means via the courts electronic filing system or if the foregoing was filed 'under seal' then by mailing same postage pre-paid or by hand delivery:

Ms. Eileen Kuo
Assistant United States Attorney

This the 23rd day of January, 2026.

*s/ Greg Gookin*

_____

Greg Gookin
Assistant Federal Defender