**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-20319-SHL |
| | ) | |
| ARI WASHINGTON, | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Ari Washington's Motion to Suppress, filed January 23, 2026.  (ECF No. 29.)  Washington, charged with being a felon in possession of a firearm, seeks to suppress the "firearm and narcotics seized from his person during a traffic stop."  (Id. at PageID 53.)  The Government responded on February 7.  (ECF No. 32.)  The Court held a suppression hearing on February 24.  (ECF No. 33.)

For the reasons stated below, the Motion is **DENIED**.

**BACKGROUND**

On the evening of October 20, 2025, at 8:07 p.m., Washington was sitting in a grey Chevy Tahoe in front of 1112 Rutland Road, near the end of a dead-end street.  (ECF No. 29 at PageID 54.)  The vehicle was idling with its lights on.  (Id.)  Officers noticed that the vehicle was "stopped in a traffic lane" in the middle of the street.  (ECF No. 32 at PageID 65.)  Tennessee Highway Patrol Trooper Donald Seiber approached the front passenger window and asked Washington for his license.  (Id. at PageID 62.)  Another officer stood at the driver's side window.  (ECF No. 29 at PageID 54.)  Both officers continuously shone their flashlights into the

vehicle during the conversation, while Seiber rested his hands inside the window frame of the Tahoe. (Id.)

While yet another officer ran Washington's license to check for warrants, Seiber asked him whether he had any guns in the car, whether he was a felon, what he had been convicted of, whether he had any drugs in the car, and whether a K-9 would find anything if they brought one. (Id.) Washington answered that he was a felon but denied that there was any contraband in the vehicle. (Id.) Despite the subject matter of the conversation, the tone was casual and congenial. Seiber asked questions calmly and respectfully, and Washington answered them in good humor, at times even joking with the officer. After returning Washington's driver's license, Seiber asked for permission to search the Tahoe. (Id.) Washington agreed and stepped out to stand beside one of the officers' vehicles. (Id.) During the search, Washington remained unrestrained. (ECF No. 32 at PageID 63.) The officers never unholstered their guns.

During the search of the vehicle, the officers found 2.6 grams of fentanyl.[1] (Id.) They then handcuffed Washington. (Id.) An AR-style pistol was also found in the Tahoe. (Id.) Finally, during a probable cause search of Washington's person, they found 1.2 grams of cocaine in his pocket. (Id.)

---

[1] At this point, Seiber carried the plastic bag of white powder found in the Tahoe toward where Washington stood among the other officers, to confront him with it. Seiber asked Washington how often he used drugs and whether he was a dealer. Washington remained unrestrained during this round of questioning. However, now that Seiber had probable cause to arrest him, and now that Washington was no longer free to leave, these questions were likely inappropriate without first reading Washington his Miranda rights.

Nevertheless, at the suppression hearing, the Government asserted that it would not seek to enter the statements elicited by these questions into evidence at trial. Nor, for that matter, does Washington seek to suppress them in his Motion. Thus, relying on the Government's representations, the Court does not address the exclusion of Washington's statements under the Fifth Amendment in this Order.

Washington filed this motion to suppress the evidence of the gun and the drugs, arguing that the entire encounter amounted to an investigative detention, not a consensual encounter, violating his Fourth Amendment rights.  (ECF No. 29 at PageID 55.)

## ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV.  Police searches conducted with the searched party's voluntary consent are presumptively reasonable, and any evidence discovered during those searches is generally admissible.  Schneckloth v. Bustamonte, 412 U.S. 218, 245–46 (1983).

However, a consensual encounter "becomes a seizure when 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  United States v. Jones, 562 F.3d 768, 772 (6th Cir. 2009) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  Factors indicating that a reasonable person would have believed they were not free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  Mendenhall, 446 U.S. at 554 (citations omitted).  On the other hand, factors indicating that a reasonable person would have felt free to leave include "(1) [t]he purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as . . . whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . ."  United States v. McCall, 433 F. App'x 432, 437 (6th Cir. 2011) (citation omitted).  Whether a search is consensual or a seizure impacts whether it can be accomplished without a warrant or other basis.

3

Here, Washington argues that the conversation through the window of the Tahoe was an investigative detention, not a consensual encounter, because Seiber very quickly began asking pointed questions about drugs and guns, and because officers surrounded the vehicle on three sides, while two officers leaned against the doors of the Tahoe with their flashlights shining in. (ECF No. 29 at PageID 58.)  In response, the Government contends that a reasonable person would have felt free to leave, and thus the encounter was consensual, because Seiber returned Washington's license before asking to search the car, and because he calmly asked several times for Washington's permission to search, repeating phrases such as "If it's alright with you—" and "If it's cool with you—."  (ECF No. 32 at PageID 65.)  At the same time, according to the Government, the officers did not attempt to intimidate or coerce Washington—they did not touch him, use loud voices, or make any threats.  (Id.)  After Washington agreed to step out of the Tahoe, officers still did not restrain him, which, the Government contends, would have led a reasonable person to believe that they could terminate the search at any time.  (Id.)

Considering the totality of the circumstances, the encounter between Washington and the officers was consensual.  Although Washington had officers at his driver-side and passenger-side windows during the questioning, they did not touch him, draw their weapons, or speak forcefully to him.  And, although Seiber placed his hands on the window's edge during the encounter, it was a natural posture for speaking through an open window.  The questioning itself, which lasted about six minutes, was not inappropriately long.  The tone of the conversation was friendly and casual.  The place of the questioning was not hostile or coercive because, at the time Seiber asked to search, Washington remained in the driver's seat, with his driver's license returned to him.  Under these circumstances, a reasonable person might understandably be nervous, even without contraband in the vehicle, but a reasonable person would also believe that he could

4

terminate the encounter with the officers.  Thus, the permission to search, which Washington repeatedly gave, was not coerced, but voluntary.  The purpose of the exclusionary rule—to discourage officer misconduct—would not be served by suppressing evidence under these circumstances.

### CONCLUSION

For the reasons stated above, the Motion is **DENIED**.

**IT IS SO ORDERED,** this 3rd day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE